In the Matter of WILLIAM LURIE, an Attorney, Respondent.

First Department, April 17, 1942.

*Einar Chrystie*, for the petitioner.

*John F. X. Finn* of counsel [*Keith Lorenz* with him on the brief; *Lorenz, Finn & Lorenz*, attorneys], for the respondent.

UNTERMYER, J. The respondent is charged with professional misconduct in that he bribed a judge in a proceeding then pending before him or in that he gave false evidence when he testified to that effect on the trial of the judge for the crime of bribery resulting in the acquittal of the judge. The respondent is also charged with participation in two acts of bribery of an assistant district attorney against whom he testified in disciplinary proceedings resulting in disbarment.

In his answer to the charges the respondent denies that he gave false testimony and asserts his participation in the acts of bribery. We find it unnecessary to decide in this proceeding which of these alternatives is true, for in either case the respondent should be disbarred. If it be true that he committed these acts of bribery, then it is manifest that he is not a proper person to remain a member of the bar. · If, on the contrary, he did not commit them, then his testimony given at the trial of the judge must have been intentionally false and, it is likewise evident, he should be disbarred.

We have considered all the facts urged upon the court in mitigation of the punishment to be imposed, including a letter from the public prosecutor, recommending some punishment short of disbarment on account of the respondent's co-operation with the public authorities. We find no circumstances sufficient to warrant the exercise of leniency.

The respondent should be disbarred.

DORE and CALLAHAN, JJ., concur.

MARTIN, P. J. (concurring). The respondent in this proceeding is charged with professional misconduct in either giving the sum of $1,000 to a county judge of Kings county or giving false testimony when he so stated under oath on the trial of that judge. He is also charged with having participated on two additional occasions in the giving of bribes to an assistant district attorney of Kings county.

In answer to the charges the respondent has admitted his participation in several acts of bribery and has denied that he gave false testimony. He says that he offers in mitigation of his punishment his previous unblemished record as an attorney for more than twenty years and states that he made a full and complete confession and disclosure to the public authorities, with whom he says he has thoroughly co-operated.

In May of 1939, in the case of People v. Martin, the respondent testified that in July, 1937, he was retained to represent Dr. Louis Duke, a Brooklyn physician who had been indicted with others for committing an unlawful abortion. On August 4, 1937, he told Dr. Duke and the latter's brother, Andrew Duke, that he knew the judge of the County Court before whom the matter was pending and would discuss the case with him. The respondent had motion papers prepared for an inspection of the grand jury minutes and made such a motion returnable on August 16, 1937. Prior to the argument of that motion, the respondent says he spoke to the judge in his chambers. Later that morning the motion was granted from the bench and an order was entered that same day.

The respondent further testified that between August 17 and August 24, 1937, he called at the judge's chambers in response to a telephone call. During that visit the judge asked him for a loan of $1,000. The respondent said he could not make such a loan at that time but agreed to "bring" $500. The following day, he says, he brought the judge $500 in cash and he then promised to give the balance on a subsequent date. On August 24, 1937, the respondent moved to dismiss the indictment against his client, Dr. Duke. He told Dr. Duke and Andrew Duke he was satisfied that everything would work out all right and that the judge would take care of the matter. Dr. Duke gave the respondent $1,000 during September, 1937. Shortly thereafter, the respondent says, he gave the judge $500 in cash, and on October 5, 1937, after the two payments referred to had been made, the judge dismissed the indictment against Dr. Duke. The respondent also testified that no written evidence of a loan was ever given to him by the judge, that the latter never offered to repay the money, and that the respondent never demanded payment.

The respondent also testified before Hon. Isaac M. Kapper, official referee, Supreme Court, Second Department, in the disciplinary proceedings which resulted in the disbarment of Francis A. Madden. In his testimony the respondent said that he represented Dr. Duke who had been indicted for abortion and that he told an attorney named Mortimer Scope that Madden was persecuting his client. Through Scope the respondent met another attorney named Harold Karp who had known Madden intimately for a number of years. The respondent asked Karp to do what he could to induce Madden to "be reasonable with Dr. Duke." Karp later advised the respondent that Madden wanted $5,000, in return for which he would "leave the doctor alone as best as possible." Thereafter the respondent had several conversations with Dr. Duke and the latter's brother, Andrew Duke, as a result of which Andrew

Duke gave the respondent $5,000 in cash. The respondent turned the money over to Karp to be delivered to Madden. It was also arranged that monthly payments of $200 were to be made on behalf of Dr. Duke to the respondent who, in turn, paid the money over to Karp for delivery to Madden. As part of the conspiracy, a code was arranged so that Dr. Duke could be warned when a raid was to be made.

In the disciplinary proceeding against Madden, in addition to the admissions by the respondent, testimony was given by Dr. Duke's brother, Andrew Duke, and three attorneys, Harold Karp, George Blank (Dr. Blank's brother) and Philip L. Berman, which confirmed the respondent's statements and disclosed the active part taken by the respondent in the conspiracy.

Andrew Duke testified he received $5,000 in cash from his brother, Dr. Duke, the respondent's client, which he delivered to the respondent in October, 1937, as part of an agreement to pay $10,000 as a bribe to Madden. The balance was to be paid in monthly installments of $200.

Harold Karp, an attorney, testified that he had known Madden since 1928, when they tried cases for the Equitable Casualty Company. He testified to several conversations with the respondent, as a result of which he claims he spoke to Madden and finally made an agreement with Madden under which $10,000 was to be paid by Dr. Duke to Madden, who was to do nothing to harm the doctor. He further testified that $5,000 eventually went to Madden and the witness testified that a series of code words was arranged by which Dr. Duke could be warned of any impending raids.

Karp further testified that the respondent said that a doctor named Blank, an abortionist, had been anxious to return to Brooklyn to continue in business there but Madden had prevented him from doing so. As a result of this conversation with the respondent, Karp said his office associate, Philip L. Berman, eventually communicated with Dr. Blank and the latter's brother, George Blank, an attorney. Following negotiations between these parties and Madden, it is claimed that $10,000 was given by George Blank to Berman, who gave it to Karp. The latter testified he gave part of it to Madden. Five other payments of $600 a month were made by George Blank through Berman to Karp, who testified he kept most of this but did give $250 to the respondent.

Karp's testimony was corroborated in part by that of George Blank and Philip L. Berman. Blank testified that between February and June, 1939, he gave Berman $10,000 in cash and thereafter gave him five monthly payments of $600 each. Berman admitted that he received these sums totaling $13,000 and said that he turned that money over to Karp.

The respondent has sworn that he gave $1,000 to Judge George W. Martin at a time when motions to examine grand jury minutes and to dismiss an indictment against respondent's client were pending. It is a matter of record that both motions were granted. From the respondent's own testimony, as well as from his answer which fails to deny the bribery charges in the petition herein, it is clear that he contended that he paid this money as a bribe. We must note that a jury acquitted County Judge George W. Martin.

We also have the respondent admittedly giving $5,000 to Karp to bribe Assistant District Attorney Madden to be reasonable with his client, Dr. Duke. We also have evidence that this respondent put in motion a conspiracy by which it is claimed a part of $13,000, paid on behalf of Dr. Blank, eventually reached Madden, as a bribe to " ease up " the alleged " persecution " of Dr. Blank.

In throwing himself upon the mercy of the court, the respondent asserts he is a man who has committed but one serious wrong in twenty years of practice. A careful review of this sordid picture reveals, however, his active participation in a series of bribes and conspiracies relating to the abortion " racket " in Kings county. As a result, in part, of his activities, an assistant district attorney has been disbarred and three attorneys, Karp, Berman and Blank, have all resigned from the bar because of their connection with the conspiracies referred to in this opinion. Furthermore, criminal proceedings were instituted against County Judge George W. Martin. The respondent's improper conduct extended over many months. His activities in seeking to corrupt or in corrupting representatives of the bench, the bar and law enforcement agencies are among the most vicious that have at any time been called to the attention of this court.

We realize that if they were the proper type of public officials they could not be corrupted. Not only did he endeavor to defeat the criminal proceedings pending against his client, but by means of a " tip-off " code, the respondent and his fellow conspirators sought to permit Dr. Duke and Dr. Blank to continue their criminal activities fully protected and with little danger of apprehension.

Such shocking conditions in the law enforcement agencies could not have existed without the aid of the respondent, who appears to have been the moving force in the entire conspiracy.

We appreciate the letter sent by the Special Attorney-General to this petitioner and the statements contained therein, but such statements should not affect the punishment to be imposed by this court. In view of the fact that three lawyers, who were evidently induced by the respondent to take part in the conspiracy planned and executed by him, have resigned from the bar, knowing

they could not successfully defend themselves in disciplinary proceedings, it would be a reflection on the courts to permit the respondent to remain a member of an honorable profession.

The admissions by respondent were not entirely voluntary but were forced in a large measure by Dr. Duke's disclosure, which placed the respondent in a position where he had to tell the truth or face criminal charges of bribery. The respondent has already substantially benefited by his alleged co-operation with the authorities. He has avoided criminal prosecution for the several crimes in which he participated. He and the other participants in the several crimes referred to herein are most fortunate that they are not now in prison.

The respondent should be disbarred.

Townley, J., concurs.

Respondent disbarred.